**UNITED STATES of America, Plaintiff,**

v.

**Ferenc KOREH, Defendant.**

**Civ. A. No. 89–2544(MTB).**

United States District Court,
D. New Jersey.

Sept. 18, 1992.

Susan L. Siegal, Office of Special Investigations, Criminal Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Judd Burstein, New York City, for defendant.

## ORDER

BARRY, District Judge.

This matter having come before the Court upon the appeal of defendant of that portion of the May 11, 1992 opinion and order of the Hon. Stanley R. Chesler, U.S.M.J., upholding plaintiff's assertion of the state's secrets privilege with respect to certain documents sought in discovery by defendant; and the court having considered the submissions of the parties both in support. of and in opposition to the appeal without oral argument pursuant to Fed. R.Civ.P. 78; and

it being the opinion of the Court that in reviewing the non-dispositive orders of a

Magistrate–Judge, the Court must apply the standards set forth in 28 U.S.C. § 636(b)(1)(A), Fed.R.Civ.P. 72(a), and Rule 40(D)(4) of the General Rules of the United States District Court for the District of New Jersey, and, therefore, that the order of a Magistrate–Judge may be set aside only if it is clearly erroneous or contrary to law; *see generally, Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3rd Cir. 1986); and

it being the opinion of the Court that the order of the Magistrate–Judge is neither clearly erroneous nor contrary to law;[1]

IT IS on this 18th day of September, 1992, hereby

ORDERED, that the May 11, 1992 ruling of the Magistrate–Judge is affirmed in its entirety.

## OPINION

CHESLER, United States Magistrate Judge.

This matter comes before the undersigned as a result of the Court's *in camera* examination of various F.B.I. and C.I.A. documents in connection with the above-captioned action. By Order entered January 7, 1992, I determined that a number of these documents were relevant to the litigation and were subject to discovery by defendant unless covered by a valid privilege. Following this determination, the Government voluntarily provided defendant with a number of the documents which I found to be relevant.[1] Various privileges were asserted as to the remaining documents including the "informants" privilege, the "government secrets" privilege, and a claim of statutory privilege under section 403(d)(3) of Title 50 of the United States Code.

## I. BACKGROUND

This is a denaturalization proceeding in which the United States seeks to revoke the citizenship of defendant Ferenc Koreh on the grounds that, during the naturalization and immigration process, he concealed his propaganda efforts on behalf of the Nazis during the World War II era. These efforts allegedly included publishing material that encouraged Nazi persecution of Jews. As part of his defense, defendant contends that he was the subject of a "disinformation campaign" waged by Soviet bloc intelligence services against he and other Eastern European emigres who have been employed by Radio Free Europe or who were outspoken anti-Communists. Defendant, therefore, sought discovery of documents in the Government's possession which might evidence such a campaign. In addition, defendant sought documents which: 1) identify witnesses with knowledge of the facts in the complaint; 2) demonstrate when the Government first became aware of the facts alleged in the complaint; and 3) indicate a confidential relationship between defendant and either

---

1. After an *in camera* review of the documents in question, I completely agree with Magistrate–Judge Chesler's findings. First, defendant's argument that there is no present need to protect these documents, as the Magistrate–Judge noted, ignores the reality that the government has a real, present interest in protecting its sources to ensure, among other reasons, its access to future sources. My review of the documents reveals no indication of bad faith on the part of the government in the assertion of the privilege, as defendant suggests.

Second, defendant's contention that this case is only "technically" a civil case and that the court should apply the provisions of the Classified Information Procedures Act, 18 U.S.C.App. IV § 1 *et seq.*, which by its express terms applies only to criminal cases, to cases involving denaturalization is wholly unpersuasive. Contrary to defendant's assertions, the line between criminal and civil actions is neither fortuitous nor inconsequential. The line between criminal and civil law is particularly bright where it is delineated by congressional action; it is not for the court to redraw that line.

Moreover, I agree with the result reached by the Magistrate–Judge in his balancing test under *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982). While defendant may remain dissatisfied with the stipulations proposed by the government, they are certainly adequate under the circumstances. Defendant is not entitled to more by way of stipulation than he could have gained by disclosure of the documents.

1. They are found on the pages bearing Bates stamp numbers M–178, M–201, M–308, M–324, M–325b, M–328, M–393a, M–257g (page 2, lines 5–7 and first word on line 8 only).

the C.I.A. or the F.B.I. The Court's Order of January 7, 1992 reflects those documents which it examined *in camera* and found to be relevant under these requests.

## II. DISCUSSION

### A. The "State Secrets" Privilege

■ Relying upon *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the Government contends that the bulk of the remaining withheld documents are protected by the "state secrets" privilege.[2] The procedure established in *Reynolds* for invoking the privilege requires that "[1] [t]here must be a formal claim of privilege, [2] lodged by the head of the department which has control over the matter, [3] after actual personal consideration by that officer." *Id.* at 7–8, 73 S.Ct. at 532. When appropriately asserted, the privilege is absolute and may not be pierced by any demonstration of need, no matter how compelling. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C.Cir.1984).

■ Ultimately, the Court must determine whether the Government has met its burden of establishing that the disclosure of the documents in question would jeopardize military or state secrets. Thus, the privilege "prohibits the disclosure of information relating to national defense, military affairs, international relations and related activities of national preparedness." *Jabara v. Kelley*, 75 F.R.D. 475, 483 (E.D.Mich.1977). It must be upheld "whenever there is a 'reasonable danger' that disclosure of the information would reveal matters which, in the interest of national security, should not be disclosed." *Id.* As noted by the Court in *Northrop Corp.*, "[i]t is not necessary for the government to show that harm will inevitably result from disclosure...." 751 F.2d at 402. All the Government must show "is a reasonable danger that harm will result from disclosure." *Id.*

■ A review of the Government's submissions discloses that it clearly has met the formal requirement for claiming the privilege. The Attorney General of the United States, the head of the Justice Department, which has jurisdiction over the F.B.I. (the originator of the bulk of the documents), formally has asserted the privilege claim in his declaration. Declaration of William P. Barr ("Barr Decl.") ¶ 2. The declaration further discloses that Attorney General Barr's assertions, including the claim of privilege "are based upon [his] knowledge and upon [his] personal review and consideration of documents and information available to [him]." Barr Decl. ¶ 1. This clearly is sufficient to satisfy the *Reynolds* requirement that "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 532.

Turning to the substance of the Government's claim, the Court also is satisfied that the privilege has been properly asserted. In essence, Attorney General Barr's declaration and the supporting declaration of Wayne R. Gilbert, Assistant Director of the F.B.I., Intelligence Division, assert that the withheld material reasonably could be expected to cause damage to national security by creating a substantial risk that the identity or identities of intelligence sources might thereby be disclosed. In particular, the declaration discloses, in detailed form, how each withheld document contains singular information which might permit hostile governments to deduce the identity of these intelligence sources. The Court has, as discussed earlier, conducted an *in camera* inspection of each of the withheld documents. It has reviewed each document in conjunction with the portion of the Barr declaration and the Gilbert declaration which relates to it. The Court is satisfied that all of the material does indeed contain information which poses a substantial risk to U.S. Intelligence.

---

**2.** The state secrets privilege has been asserted as to material deemed relevant in documents numbered M–238, M–239, M–257g (par. 2, line 8, words 2–end, and all of line 9), M–330a (par. 2 and 3), M–344, M–345 and M–391).

The Court has considered defendant's contention that this information is not subject to any "legitimate present need" for protection because the allegations against defendant involve events occurring fifty years ago. This argument ignores the fact that the asserted "disinformation" campaign directed against defendant is alleged to be of much more recent vintage.

Likewise, defendant's argument that recent political changes is Eastern Europe militate against any continuing need for secrecy cannot be accepted. Defendant contends that "[t]he secrecy necessary during the Cold War was far greater than the secrecy needed today. This defendant should not be limited in his defense because of an archaic view of world politics." (Defendant's Letter Brief of March 19, 1992, at 3). Common sense indicates that an intelligence organization which compromises its source of information is unlikely to recruit new sources. Whatever the current political state of affairs in the former communist bloc may be, this Court is not prepared to view the need for U.S. Government agencies to conceal the identity of current and former intelligence sources as constituting "an archaic view of world politics."

In short, the Court is satisfied that each withheld document contains information which, although not directly revealing an intelligence source, is of a sufficiently singular nature such that other intelligence agencies could make substantial use of it in trying to identify the sources of the information. Moreover, the Court is convinced that further redactions to the documents would not be sufficient to ameliorate this danger and that the disclosure of this information would indeed reveal matters which, in the interest of national security, should not be disclosed.

### B. The Statutory Privilege Under 50 U.S.C. § 403(d)(3)

■ A statutory claim of privilege as to two documents [3] has been asserted by the Central Intelligence Agency under section 403(d)(3) of Title 50 of the United States Code. Section 403(d)(3) provides that the Director of the C.I.A. has the responsibility for protecting "intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403(d)(3). The Supreme Court has interpreted this section to vest in the Director of Central Intelligence "very broad authority to protect all sources of intelligence information from disclosure." *Central Intelligence Agency v. Sims,* 471 U.S. 159, 168–69, 105 S.Ct. 1881, 1887, 85 L.Ed.2d 173 (1985). Indeed, the Court indicated that, in enacting this provision "Congress entrusted this Agency with sweeping power to protect its 'intelligence sources and methods.'" *Id.* at 169, 105 S.Ct. at 1887. Thus, there can be little doubt that this section provides the basis for a statutorily based claim of privilege when asserted by the C.I.A.

■ In this case, the claim has been asserted through the declaration of Katherine Stricker, Information Review Officer for the Director of Operations of the Central Intelligence Agency. In her declaration, Ms. Stricker provides a detailed analysis of why disclosure of these two documents presents a substantial risk that the identities of intelligence sources might thereby be compromised. Although the documents do not specifically identify any particular intelligence source, the Government claims that the information contained in the documents is sufficiently singular that disclosure would create a substantial likelihood that foreign governments could deduce the identity of the source. Upon reviewing Ms. Stricker's affidavit and the documents themselves, I am satisfied that the Government's claim is correct, and that such a risk would indeed be substantial were disclosure ordered. Therefore, the claim of privilege will be upheld.[4]

---

**3.** These are the documents which are Bates stamp numbered M–382(a) and M–330(a).

**4.** The Court notes that, even in the absence of a statutory basis for the privilege, the common law informants privilege would also apply here and, under the circumstances of this case, would warrant withholding the documents. *But see Roviaro v. United States,* 353 U.S. 53, 62–64, 77 S.Ct. 623, 628–30, 1 L.Ed.2d 639 (1957) (where informer's possible testimony was found to be highly relevant and possibly helpful to the defense, and the informer was the only witness in a position to amplify or contradict the testi-

## C. Consequences of Upholding the Privilege

■ Defendant contends that, once the Government's claim of privilege is upheld, he is entitled to the protections conferred under the Classified Information Procedures Act, 18 U.S.C.App. IV § 1 *et. seq.*, to criminal defendants. Defendant argues that the severity of the consequences to him, coupled with the burden of proof imposed upon the Government in denaturalization cases,[5] makes such proceedings equivalent to criminal prosecution and, thus, warrants the same statutory protection. While the Court agrees that the potential consequences of these proceedings are indeed quite serious, such consequences are not criminal in nature. Contrary to defendant's contention, the standard of proof enunciated in *Fedorenko* simply does not equate with the criminal standard of "beyond a reasonable doubt." In short, there is simply no reasoned basis for extending, by judicial fiat, statutory provisions to proceedings which Congress never intended to be covered by statute.

■ Moreover, the Court is satisfied that the balancing approach adopted by the Court in *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982) *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), provides ample protection to defendant. There, the district court dismissed a civil complaint after the Attorney General relied upon a claim of privilege instead of producing documents concerning a defense claim of selective prosecution. The dismissal was predicated upon the district court's determination that the withheld materials "might serve to exculpate" the defendant. The court of appeals reversed and stated:

> Certainly the *possibility* of exculpation— if the defense of selective prosecution can be said to "exculpate" defendant— must be considered by the court, but other factors must be weighed as well:

the *likelihood* that they will serve to exculpate defendant, their *necessity* for the defense, *what defendant stands to lose* in the case, the *government's interest* in maintaining the material's *secrecy* and in successfully *bringing the action*, the *availability of alternatives* to a dismissal-or-disclosure order, and, generally, the parties' respective behavior, cooperation or lack of cooperation, and good or bad faith during the course of the lawsuit.

684 F.2d at 951 (emphasis in original).

While defendant argues that this balancing approach is "wholly inappropriate" in a case which "threatens Mr. Koreh with the loss of his home, family and all constitutional rights," (Defendant's Letter Brief of March 19, 1992, at 4), this contention is clearly misguided. Defendant wholly ignores that the court in *Irish People* explicitly factored into the analysis the question of "what defendant stands to lose in the case," and weighed it along with the other parts of the equation. 684 F.2d at 951. Thus, under this approach, the legitimate concerns of defendant, along with the government's interests, are carefully evaluated.

■ Balancing these factors in this case is relatively easy:

### 1. Possibility of Exculpation and Necessity for Defense

The Court has carefully reviewed the withheld material and concludes that its value to defendant is slight. This is particularly so in view of the fact that the most significant material relating to defendant's "disinformation" defense has already been released by the Government as a result of this Court's earlier *in camera* review of the withheld material. In short, it adds little or nothing to the ammunition defendant now has.

mony of the government witnesses, the Court held that the public interest in protecting the flow of information did not outweigh the individual's right to prepare the defense).

5. The Supreme Court has held that the evidence justifying revocation of citizenship must be "'clear, unequivocal, and convincing.'" *Fedorenko v. United States*, 449 U.S. 490, 505, 101 S.Ct. 737, 747, 66 L.Ed.2d 686 (1981) (citations omitted).

### 2. What Defendant Stands to Lose

Undoubtedly, defendant stands to lose very significant rights should the Government prevail in this case; the potential consequences are indeed serious. Nevertheless, this is *not* a criminal case and defendant does not face the possibility of incarceration and loss of liberty as a result of the case. As recognized by the Court in *Irish People*, this "civil/criminal distinction is important," 684 F.2d at 953, and weighs in favor of the Government.

### 3. Government's Interest in Maintaining Secrecy

As discussed earlier, disclosure of the withheld information poses a substantial risk that intelligence sources might be compromised. This, in my view, demonstrates a compelling interest in maintaining secrecy on the part of the Government.

### 4. Government's Interest in Bringing the Action

The Government clearly has a substantial interest in pursuing this action. If the Government's claims are correct, Mr. Koreh secured his citizenship in the United States while concealing his involvement and support of Nazi persecutions during World War II. Certainly, the United States has the right, indeed the obligation, if the claims are true, to do what it can to rectify the situation. Thus, the Government's interest in the continuation of the suit is a strong one.

### 5. Good Faith and Cooperation

As mentioned above, following the Court's initial *in camera* review of classified documents for purposes of determining relevancy, the Court identified a number of documents which it found to be relevant to the defense. *See* Order of January 7, 1992. Following this determination, the Government was directed to determine which of these documents it would voluntarily provide to defendant and which ones it would continue to claim were privileged. The Court has reviewed the material that the Government thereafter provided to defendant. This review disclosed that, without doubt, the material which was of real significance and potential benefit to defendant was *voluntarily* disclosed. Based upon this, the Court must conclude that the Government has proceeded cooperatively and in good faith.

### 6. Alternatives to Disclosure

In lieu of disclosure, the Government has offered to stipulate to the information that the withheld documents would disclose. The Court is satisfied that the proposed stipulation by the Government more than satisfactorily substitutes for the documents themselves. As the Court in *Irish People* held: "So long as the defendant is not deprived of any of the evidence the documents might contain, in fact, it has lost nothing at all." 684 F.2d at 954. Such is the case here.

The Court's analysis of the above factors indicate that, under the balancing test, the Government's position is justified. Thus, by upholding the Government's privilege claim and requiring it to enter into the proposed stipulation, the legitimate interests of both parties will be met.

## III. CONCLUSION

Based upon the foregoing, the Court concludes that the Government's claims of privilege as to the various withheld documents must be sustained. The Court further concludes that the Government should be required to enter into the stipulation proposed by it, which will serve as a substitute for the withheld documents. An Order embodying this determination will be entered simultaneously with the filing of this Opinion.